

13 CV 2079

JUDGE SCHEINDLIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

ALIOUNE DIENG,

                            Plaintiff,

            -against-

THE CITY OF NEW YORK, POLICE OFFICER LEWIS
RUSSELL, and JOHN/JANE DOE # 2 – 3,

                            Defendants.
-----------------------------------------------------------x

COMPLAINT

JURY TRIAL DEMANDED

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of Plaintiff's rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

5. Plaintiff demands a trial by jury in this action.

## PARTIES

6. Plaintiff Alioune Dieng ("Plaintiff" or "Mr. Dieng"), an African-American male, is a resident of the County of New York, City of New York.

7. Defendant The City of New York is a municipal organization organized under the laws of the State of New York.

8. Defendant The City of New York operates the New York City Police Department ("NYPD"), a department or agency of Defendant The City of New York.

9. The NYPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10. At all times relevant herein, Defendant Police Officer Russell ("Russell") was an officer, employee, and agent of Defendant The City of New York.

11. At all times relevant herein, Defendant Russell was acting within the scope of his employment with Defendant The City of New York.

12. At all times relevant herein, Defendant Russell was acting under color of state law.

13. Defendant Russell is sued in his individual and official capacities.

14. At all times relevant herein, Defendants John/Jane Doe # 2 - 3 were supervisors, officers, employees, and/or agents of Defendant The City of New York.

15. At all times relevant herein, Defendants John/Jane Doe # 2 - 3 were acting within the scope of their employment with Defendant The City of New York.

16. At all times relevant herein, Defendants John/Jane Doe # 2 - 3 were acting under color of state law.

17. Defendants John/Jane Doe # 2 - 3 are sued in their individual and official capacities.

18. The names John/Jane Doe # 2 - 3 are fictitious, their true names being unknown to Plaintiff at this time.

## STATEMENT OF FACTS

19. On November 27, 2012, Mr. Dieng was lawfully present at True Sound Lounge located near the intersection of East 135th Street and Walnut Avenue in Bronx, New York.

20. At approximately 3:30 a.m., Mr. Dieng left True Sound Lounge on foot, walking along the sidewalk.

21. Upon arriving at 138th Street and Walnut Avenue, Mr. Dieng noticed a helicopter overhead.

22. Suddenly, a police car pulled up alongside Mr. Dieng as he walked on the sidewalk.

23. Defendant Russell and his partner, Defendant John/Jane Doe # 2, got out of the police car.

24. Defendants Russell and John/Jane Doe # 2 immediately approached Mr. Dieng and began patting him down.

25. Mr. Dieng told the officers that they were conducting an illegal search.

26. Defendants Russell and John/Jane Doe # 2 told Mr. Dieng that they had reports of people committing vandalism on the rooftop of Bronx Finest Towing.

27. Defendants Russell and John/Jane Doe # 2 told Mr. Dieng that an eyewitness had identified him as one of the persons vandalizing the roof of Bronx Finest Towing.

28. Defendants Russell and John/Jane Doe # 2 told Mr. Dieng that, because he had been identified as one of the perpetrators, he was under arrest.

29. In fact, Mr. Dieng had not been identified as having been one of the persons vandalizing the roof of Bronx Finest Towing. *See* Affidavit In Support of Declining/Deferring Prosecution, annexed hereto as Exhibit "1".

30. Defendants Russell and John/Jane Doe # 2 had spoken to Arturo Martinez, an eyewitness to the vandalism on the roof of Bronx Finest Towing. *Id.*

31. Mr. Martinez told Defendants Russell and John/Jane Doe # 2 that Mr. Dieng had not been on the rooftop of Bronx Finest Towing. *Id.*

32. Mr. Martinez told Defendants Russell and John/Jane Doe # 2 that Mr. Dieng had simply been in the vicinity at the time of the incident. *Id.*

33. At no time did any eyewitness or police officer see Mr. Dieng on the rooftop or property of Bronx Finest Towing. *Id.*

34. Defendants Russell and John/Jane Doe # 2 also viewed surveillance video of the incident, and Mr. Dieng appeared nowhere in said video. *Id.*

35. Despite knowing this, Defendants Russell and John/Jane Doe # 2 placed Mr. Dieng under arrest.

36. Defendants Russell and John/Jane Doe # 2 continued to search Mr. Dieng's pockets and pulled out Mr. Dieng's cell phone and cell phone charger.

37. Defendants Russell and John/Jane Doe # 2 accused Mr. Dieng of having stolen the cell phone and cell phone charger despite Mr. Dieng telling them that the items belonged to him.

38. At some point, Defendant John/Jane Doe # 3, a supervisor, arrived at the location.

39. Defendant John/Jane Doe # 3 approved the arrest of Mr. Dieng.

40. Mr. Dieng was transported to a police precinct by Defendants Russell and John/Jane Doe # 2.

41. Once at the police precinct, Mr. Dieng was placed into a holding cell with two other individuals. These individuals laughed at him and told Defendants Russell and John/Jane Doe # 2 that Mr. Dieng wasn't the person that had been vandalizing the roof of Bronx Finest Towing with them.

42. At some point, Mr. Dieng was transported to Bronx Central Booking.

43. The individual defendants spoke with the Bronx County District Attorneys' Office, individually and collectively lying to the Bronx County District Attorney's Office that Mr. Dieng had violated New York Penal Law § 140.10(a).

44. Despite the fabricated allegations, the Bronx County District Attorney's Office declined to prosecute Mr. Dieng. *Id.*

45. At approximately 8 p.m., Mr. Dieng was released from Bronx Central Booking.

46. Mr. Dieng suffered damage as a result of Defendants' actions. Mr. Dieng was deprived of liberty, suffered emotional distress, mental anguish, fear, anxiety, embarrassment, humiliation, and damage to reputation.

## FIRST CAUSE OF ACTION
### *42 U.S.C. § 1983*

47. Mr. Dieng repeats and realleges each and every allegation as if fully set forth herein.

48. Defendants, by their conduct toward Mr. Dieng as alleged herein, violated Mr. Dieng's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

49. As a direct and proximate result of this unlawful conduct, Mr. Dieng sustained the damages herein alleged.

## SECOND CAUSE OF ACTION
*Unlawful Stop and Search*

50. Mr. Dieng repeats and realleges each and every allegation as if fully set forth herein.

51. Defendants Russell and John/Jane Doe # 2 violated the Fourth and Fourteenth Amendments because they stopped and searched Mr. Dieng without reasonable suspicion.

52. As a direct and proximate result of this unlawful conduct, Mr. Dieng sustained the damages herein alleged.

## THIRD CAUSE OF ACTION
*False Arrest*

53. Mr. Dieng repeats and realleges each and every allegation as if fully set forth herein.

54. The individual defendants violated the Fourth and Fourteenth Amendments because they arrested Mr. Dieng without probable cause.

55. As a direct and proximate result of this unlawful conduct, Mr. Dieng sustained the damages herein alleged.

## FOURTH CAUSE OF ACTION
*Denial of Substantive Due Process*

56. Mr. Dieng repeats and realleges each and every allegation as if fully set forth herein.

57. Defendants Russell and John/Jane Doe # 2 created false evidence against Mr. Dieng, *inter alia*, property vouchers, arrest reports, and complaint reports.

58. Defendants Russell and John/Jane Doe # 2 forwarded false evidence to prosecutors in the Bronx County District Attorney's Office.

59. In creating false evidence against Mr. Dieng, and in forwarding false evidence to prosecutors, Defendants Russell and John/Jane Doe # 2 violated Mr. Dieng's right to substantive due process under the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

60. As a direct and proximate result of this unlawful conduct, Mr. Dieng sustained the damages herein alleged.

### FIFTH CAUSE OF ACTION
*Failure to Intervene*

61. Mr. Dieng repeats and realleges each and every allegation as if fully set forth herein.

62. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

63. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

64. As a direct and proximate result of this unlawful conduct, Mr. Dieng sustained the damages herein alleged.

## SIXTH CAUSE OF ACTION
*Conspiracy under 42 U.S.C. § 1983*

65. Mr. Dieng repeats and realleges each and every allegation as if fully set forth herein.

66. The Defendants jointly participated in the deprivation of Mr. Dieng's constitutional rights as set forth herein.

67. The Defendants conspired in the deprivation of Mr. Dieng's constitutional rights by collectively lying about Mr. Dieng's actions and conduct, and intentionally withholding and/or destroying exculpatory evidence in order to support the Defendants' fabricated version of the events.

68. As a result of the Defendants' malicious efforts to damage Mr. Dieng, Mr. Dieng's liberty was restricted, and Mr. Dieng was restrained, subjected to handcuffing, and, among other things, falsely arrested.

69. As a direct and proximate result of this unlawful conduct, Mr. Dieng sustained the damages herein alleged.

## SEVENTH CAUSE OF ACTION
*Monell*

70. Mr. Dieng repeats and realleges each and every allegation as if fully set forth herein.

71. This is not an isolated incident. Defendant The City of New York, through its policies, customs, and practices, directly caused the constitutional violations suffered by Mr. Dieng.

72. Defendant The City of New York, through the NYPD, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

73. Defendant The City of New York, through the NYPD, has a *de facto* quota policy that encourages unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

74. This quota policy requires that police officers, including the individual defendants named herein, make a certain number of arrests and/or write a certain number of summonses and desk appearance tickets within an allocated time period.

75. Officers that meet the required number of arrests, summonses, and desk appearance tickets are classified as active officers.

76. Officers that do not meet the required number of arrests, summonses, and desk appearance tickets are classified as inactive officers.

77. Active officers are given promotion opportunities that are not afforded to inactive officers.

78. Active officers are given overtime opportunities, such as security at parades, etc., that are not afforded to inactive officers.

79. The quota policy does not differentiate between arrests, summonses, and desk appearance that are supported by probable cause and ones that are not.

80. Defendant The City of New York, through the NYPD, does nothing to ensure that officers, in trying to fulfill this quota policy, are making arrests and issuing summonses and desk appearance tickets lawfully. There are no post-arrest investigations that are performed, and no policies in place that would prevent abuse of this policy, such as is demonstrated in the instant case.

81. Defendant The City of New York, through the NYPD, does nothing to determine the outcome of the charges levied against arrestees in order to proper counsel officers as to the lawfulness of their arrests/issuance of summonses and desk appearance tickets.

82. The failure of Defendant The City of New York to, *inter alia*, take these steps encourages, *inter alia*, unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury, in that the quota policy provides, *inter alia*, career and monetary incentives to officers, including the individual defendants herein.

83. Defendant The City of New York, through the NYPD, has a *de facto* overtime policy that encourages and incentivizes unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

84. Defendant The City of New York, through the NYPD, provides officers, including the individual defendants herein, with overtime opportunities when arrest are made, or summonses and desk appearance tickets are issued.

85. Upon making an arrest or issuing summons or desk appearance ticket, an arresting officer submits a request for overtime to his commanding officer.

86. These requests are essentially rubberstamped, with commanding officers performing no investigation into the circumstances of the arrest.

87. Defendant The City of New York, through the NYPD, does not perform any post-arrest investigation and there are no policies in place to prevent abuse of this overtime policy.

88. As a result of this overtime policy, officers, including the individual officers named herein, abuse this overtime policy, making baseless arrests and wrongfully issuing summonses and desk appearance tickets to substantially supplement their income through overtime pay.

89. Defendant The City of New York, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

90. Defendant The City of New York, at all relevant times, was aware that the individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

91. These policies, practices, and customs were the moving force behind Mr. Dieng's injuries.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Dieng respectfully requests judgment against Defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

    (d)    Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       March 28, 2013

 

_____
Gregory P. Mouton, Jr., Esq.
The Law Office of Gregory P. Mouton, Jr.
Attorney for Plaintiff
244 5th Avenue, Suite G247
New York, NY
Phone & Fax: (646) 706-7481
greg@moutonlawnyc.com

# EXHIBIT

# 1

Typed by: DONALDSON, RASHEIM

## AFFIDAVIT IN SUPPORT OF DECLINING/DEFERRING PROSECUTION

```
===========================================================================
Arresting Officer's                     Arrest
-------------------                     ------
Name       : LEWIS RUSSELL              Arrest Date: 11/27/2012
Rank       : PO                         Arrest Time: 03:38
Shield     : 031012
Command    : 40 PCT
TaxID      : 927082000
===========================================================================
```

CHARGES:
---------

P.L. 140.10(a)

```
===========================================================================
Defendants                              Address
----------                              -------
1. B12685512 ALIOUNE DIENG              245 WEST 51 STREET
===========================================================================
```

Complainant's Name:
-------------------

NONE

```
===========================================================================
```

Category for Declining/Deferring prosecution:
---------------------------------------------

The People do not have sufficient evidence to prove the defendant committed the crime(s) charged beyond a reasonable doubt.

```
===========================================================================
```

Reason(s) for declining/deferring prosecution:
----------------------------------------------

The People are declining to prosecute the instant matter due to insufficient evidence to support the charges.

On November 27, 2012 the arresting officer and his partner responded to a radio run of suspicious persons at the above location and observed three individuals on the rooftop of Bronx Finest Towing, a commercial establishment which is gated and closed to the public. The arresting officer observed three individuals begin to flee the rooftop as an NYPD aviation helicopter shined a spotlight over the above mentioned location until separately apprehended Carlos Encarnacion (B12685511) was arrested on E. 134 St and Willow Ave. Defendant was arrested at a different location.

Eyewitness Arturo Martinez observed the suspicious individuals on the rooftop and called 911. However, he stated to the arresting officer that the defendant was not on the rooftop, but was in the vicinity, on the sidewalk, as the three individuals were on the roof. None of the eyewitnesses or police officers observed defendant on the roof of said location. Further, defendant does not appear in the surveillance video obtained in the investigation of the incident.

At this time, the people are declining to prosecute the instant matter due to the fact that there is insufficient evidence to support the charges.

002129994

```
============================================================================
Action to be taken by Arresting Officer:
----------------------------------------
Check for Warrant.
```

_____              _____
Signature of Complainant                Print Name of Complainant


*[signature]*

                                        DONALDSON, RASHEIM
_____              _____
Signature of Assistant DA               Print Name of Assistant DA



_____              _____
Signature of Arresting Officer          Print Name, Shield, Command
Date: 11/27/2012 17:12