From: Gregory Mouton    Fax: (646) 706-7481    To: Hon. Shira A. Scheindlin Fax: +1 2128057920   09/13/13    Page 1 of 3  9/11/2013 10:00

Case 1:13-cv-02079-SAS   Document 13   Filed 09/13/13   Page 1 of 3



# THE LAW OFFICE OF GREGORY P. MOUTON, JR.

Gregory P. Mouton, Jr., Esq., *Principal*
305 Broadway, 14th Floor
New York, NY 10007
Phone & Fax: (646) 706–7481
info@moutonlawnyc.com



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/13/13

September 11, 2013

Hon. Shira A. Scheindlin
500 Pearl Street, Room 1620
New York, NY 10007
Fax: (212) 805-7920

Via Fax, 3 pages

Re:   Alioune Dieng v. The City of New York, et al., 13 Civ. 2079 (SAS)

*[Handwritten:] I am suspending the Section 1983 Plan with regard to this case. A conference is scheduled for Thursday, September 19, 2013 at 4:30 p.m. SO ORDERED.*

*Shira A. Scheindlin, USDJ*
*9/12/13*

Your Honor,

My Office represents Plaintiff Alioune Dieng in the above-entitled matter. In that capacity, I write to respectfully request that the Court (1) stay the SDNY Section 1983 Plan, and (2) grant Plaintiff a pre-motion conference. As set forth herein, Plaintiff wishes to move pursuant to Fed. R. Civ. P. Rule 12(c) for judgment on the pleadings as to his claims for unlawful stop and search; false arrest; and violation of the right to a fair trial.

I.   FACTS

By way of background, Mr. Dieng began this action on March 28, 2013, alleging that his civil rights had been violated on November 27, 2012. On that date, Mr. Dieng, a musician, had been at True Sound Lounge, a recording studio located near the intersection of East 135th Street and Walnut Avenue, Bronx, New York. See First Amended Complaint, Docket Entry No. 5 at ¶ 30. Mr. Dieng left the studio at 3:30 a.m. and walked on foot until he reached 138th Street and Walnut Avenue. Id. at ¶¶ 31-2.

At that intersection, Mr. Dieng initially heard a helicopter overhead before a police car pulled alongside him as he walked. Id. at ¶¶ 32-3. Defendant Police Officer Russell Lewis, Police Officer Clement Krug, Police Stephen Carey, Police Officer Donald Sehl, and Sergeant David Camhi approached Mr. Dieng and began to pat him down, despite Mr. Dieng's objections. Id. at ¶¶ 34-6. These officers told Mr. Dieng that they had received reports of people committing vandalism on the rooftop of Bronx Finest Towing, and that Mr. Dieng had been identified as one of the perpetrators. Id. at ¶¶ 37-8. Mr. Dieng was arrested at the location, with his arrest being approved by Defendant Camhi at the scene. Id. at ¶¶ 39 & 49.

In fact, Mr. Dieng had not been identified as having been one of the perpetrators. Id. at ¶ 40. Arturo Martinez, an eyewitness to the vandalism on the roof, had, in fact, told the officers that Mr. Dieng had not been on the roof, but had, rather, simply been in the vicinity at the time of the incident. Id. at ¶¶ 42-3. The officers had also viewed video footage of the incident, and Mr. Dieng had appeared nowhere in the video footage. Id. at ¶ 45. In truth, no eyewitness or police officer had seen Mr. Dieng committing any crimes, nor

was there any evidence to suggest that Mr. Dieng had committed any crime. Id. at ¶¶ 44-5. Despite this, these officers placed Mr. Dieng under arrest. Id. at ¶ 46.

Mr. Dieng was transported to a police precinct where he was harassed by other arrestees while in a holding cell. Id. at ¶ 51. At some point, Mr. Dieng was transferred to Bronx Central Booking. Id. at ¶ 52. During that process, the individual defendants contacted the Bronx County District Attorney's Office, lying that Mr. Dieng had violated Penal Law § 140.10(a) (criminal trespass in the third degree). Id. at ¶ 53. However, after reviewing the evidence, the Bronx County District Attorney's Office determined that there was "insufficient evidence to support the charges." See id. at ¶ 54.

## II. LEGAL STANDARD

Motions for judgment on the pleadings pursuant to Fed. R. Civ. P. Rule 12(c) are considered under "the same standard as that applicable to a motion under Rule 12(b)(6)." King v. Am. Airlines, Inc., 284 F.3d 352, 356 (2d Cir. 2002). "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988) (citation omitted).

Although the Court is limited to facts as stated in the Complaint, it may consider exhibits or documents incorporated by reference without converting the motion into one for summary judgment. See Int'l Audiotext Network, Inc. v. AT&T, 62 F.3d 69, 72 (2d Cir. 1995). In the instant matter, the Court may consider the Affidavit Declining Prosecution, which was incorporated by reference into the Complaint.

## III. UNLAWFUL STOP AND SEARCH

The Second Circuit recognizes "three levels of interaction between agents of the government and private citizens" in assessing whether a defendant has been subject to an unreasonable search and seizure in violation of the Fourth Amendment. United States v. Tehrani, 49 F.3d 54, 58 (2d Cir. 1995); United States v. Hooper, 935 F.2d 484, 490 (2d Cir. 1991). The first kind are consensual encounters where "an individual willingly agrees to speak with law enforcement personnel." United States v. Glover, 957 F.2d 1004, 1008 (2d Cir. 1992). Such an encounter does not require any objective level of suspicion so long as "a reasonable person would have felt free to decline the officers' requests or otherwise terminate the encounter." United States v. Thompson, 941 F.2d 66, 69 (2d Cir. 1991). The second type of encounter is a limited investigative stop which is considered a "seizure" and requires that an officer have "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" Terry v. Ohio, 392 U.S. 1, 30 (1968). This type of encounter is also known as a "Terry stop." The third type of encounter is an arrest which must be based on probable cause. Glover, 957 F.2d at 1008.

As noted, infra, there was no probable cause to support the stop and seizure outlined by Glover. Further, there was no reasonable suspicion to perform a Terry stop.

It is undisputed that no one identified Mr. Dieng as being one of the perpetrators that night. Further, the individual defendants did not see Mr. Dieng committing any crimes, nor did Mr. Dieng appear on the video footage the officers viewed at Bronx Finest Towing. Given that, there was no reasonable suspicion to conduct a Terry stop. As such, Plaintiff should be granted judgment as to this claim.

## IV. FALSE ARREST

Judgment for false arrest in violation of a plaintiff's Fourth Amendment rights may be granted where a plaintiff must shows that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not

otherwise privileged." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). However, such a claim may not lay where there was probable cause for the arrest. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

Probable cause is assessed on an objective basis. Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007). Probable cause exists when an officer "has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995). In evaluating the probable cause determination, courts consider the facts available to the officer at the time of the arrest based on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230-32 (1983); Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) (citations omitted).

In the instant matter, prongs one through three have been met. Further, it is undisputed that, at the time of his arrest, there was absolutely no evidence or witnesses that would have given the individual defendants probable cause to arrest Mr. Dieng for criminal trespass in the third degree, or any other crime. See, generally, Complaint; Affidavit Declining Prosecution. As such, Mr. Dieng should be granted judgment as to this claim.

V.   RIGHT TO A FAIR TRIAL

To prevail on a fair trial claim based on false evidence, a plaintiff must show that "an (1) investigating official (2) fabricate[d] evidence (3) that [was] likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result." Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012).

In the instant matter, the individual defendants forwarded false evidence to prosecutors, namely arrest and complaint reports, which outlined that Mr. Dieng had been witnessed violating Penal Law § 140.10(a). This false information clearly would have been likely to influence a jury's decision and was the sole reason for Mr. Dieng's incarceration until the time that he was released from Bronx Central Booking. As such, Mr. Dieng should be granted judgment as to this claim.

Given the foregoing, it is respectfully requested that the Court issue an Order (1) staying the SDNY Section 1983 Plan in this matter, and (2) scheduling a pre-motion conference for a date and time convenient to the Court.

Thank you for your time and consideration of this matter.

Respectfully submitted,

Gregory P. Mouton, Jr., Esq.

cc:

Karl Ashanti, Esq. (Via Fax)
New York City Law Department
100 Church Street
New York, NY 10007
Phone: (212) 356-2371
Fax: (212) 788-9776